UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA,
INDIANAPOLIS DIVISION

| | |
|---|---|
| VERONIKA L. FLAKE, | |
| **Plaintiff,** | |
| *vs.* | CAUSE NO.  1:15-cv-1233-SEB-DKL |
| CAROLYN W. COLVIN, **Commissioner of Social Security,** | |
| **Defendant.** | |

### REPORT AND RECOMMENDATION

Plaintiff Veronika Flake applied for disability benefits under the Supplemental Security Income program of the Social Security Act.  She applied in January, 2012, and alleged that she became disabled in March, 2003, due to obstructive sleep apnea, high blood pressure, carpal tunnel syndrome, depression, leg pain and swelling, and left-knee arthritis and pain.  The Commissioner denied her claim and Ms. Flake brought this suit for judicial review.  The district judge referred this Cause to this magistrate judge for the submission of a report and recommended disposition.  *Order Referring Issues to Magistrate Judge* [doc. 13].

### Standards

Judicial review of the Commissioner's factual findings is deferential:  courts must affirm if her findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003).  Substantial evidence is more than a scintilla, but less than a

preponderance, of the evidence.  *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001).  If

the evidence is sufficient for a reasonable person to conclude that it adequately supports

the Commissioner's decision, then it is substantial evidence.  *Richardson v. Perales*, 402

U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Carradine v. Barnhart*, 360 F.3d 751, 758

(7th Cir. 2004).  This limited scope of judicial review derives from the principle that

Congress has designated the Commissioner, not the courts, to make disability

determinations:

> In reviewing the decision of the ALJ [administrative law judge], we cannot
> engage in our own analysis of whether [the claimant] is severely impaired
> as defined by the SSA regulations.  Nor may we reweigh evidence, resolve
> conflicts in the record, decide questions of credibility, or, in general,
> substitute our own judgment for that of the Commissioner.  Our task is
> limited to determining whether the ALJ's factual findings are supported by
> substantial evidence.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).  *Carradine*, 360 F.3d at 758.  While

review of the Commissioner's factual findings is deferential, review of her legal

conclusions is *de novo*.  *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

The Social Security Act defines disability as the "inability to engage in any

substantial gainful activity by reason of any medically-determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. §

423(d)(1)(A); 20 C.F.R. § 404.1505(a).  42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a).  A

person will be determined to be disabled only if his impairments "are of such severity

that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work."   42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).  20 C.F.R. §§ 404.1505, 404.1566, 416.905, and 416.966.  The combined effect of all of an applicant's impairments shall be considered throughout the disability determination process. 42 U.S.C. §§ 423(d)(2)(B) and 1382c(a)(3)(G).  20 C.F.R. §§ 404.1523 and 416.923.

The Social Security Administration has implemented these statutory standards in part by prescribing a "five-step sequential evaluation process" for determining disability. If disability status can be determined at any step in the sequence, an application will not be reviewed further.  At the first step, if the applicant is currently engaged in substantial gainful activity, then he is not disabled.  At the second step, if the applicant's impairments are not severe, then he is not disabled.  A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities."  Third, if the applicant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions included in the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, Part A, then the applicant is deemed disabled.  The Listing of Impairments are medical conditions defined by criteria that the Social Security

Administration has pre-determined are disabling.  20 C.F.R. § 404.1525.  If the applicant's impairments do not satisfy the criteria of a listing, then her residual functional capacity ("RFC") will be determined for the purposes of the next two steps.  RFC is an applicant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations and is categorized as sedentary, light, medium, or heavy, together with any additional non-exertional restrictions.  At the fourth step, if the applicant has the RFC to perform his past relevant work, then he is not disabled.  Fifth, considering the applicant's age, work experience, and education (which are not considered at step four), and his RFC, the Commissioner determines if he can perform any other work that exists in significant numbers in the national economy.  42 U.S.C. § 416.920(a)

The burden rests on the applicant to prove satisfaction of steps one through four. The burden then shifts to the Commissioner at step five to establish that there are jobs that the applicant can perform in the national economy.  *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).  If an applicant has only exertional limitations that allow her to perform the full range of work at her assigned RFC level, then the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "grids"),  may be used at step five to arrive at a disability determination.  The grids are tables that correlate an applicant's age, work experience, education, and RFC with predetermined findings of disabled or not-disabled.  If an applicant has non-exertional limitations or exertional

limitations that limit the full range of employment opportunities at his assigned work level, then the grids may not be used to determine disability at that level. Instead, a vocational expert must testify regarding the numbers of jobs existing in the economy for a person with the applicant's particular vocational and medical characteristics. *Lee v. Sullivan*, 988 F.2d 789, 793 (7th Cir. 1993). The grids result, however, may be used as an advisory guideline in such cases.

An application for benefits, together with any evidence submitted by the applicant and obtained by the agency, undergoes initial review by a state-agency disability examiner and a physician or other medical specialist. If the application is denied, the applicant may request reconsideration review, which is conducted by different disability and medical experts. If denied again, the applicant may request a hearing before an administrative law judge ("ALJ").[1]  An applicant who is dissatisfied with the decision of the ALJ may request the SSA's Appeals Council to review the decision. If the Appeals Council either affirms or declines to review the decision, then the applicant may file an action in district court for judicial review. 42 U.S.C. § 405(g). If the Appeals Council

---

[1] By agreement with the Social Security Administration, initial and reconsideration reviews in Indiana are performed by an agency of state government, the Disability Determination Bureau, a division of the Indiana Family and Social Services Administration. 20 C.F.R. Part 404, Subpart Q (§ 404.1601, *et seq.*). Hearings before ALJs and subsequent proceedings are conducted by personnel of the federal Social Security Administration.

declines to review a decision, then the decision of the ALJ becomes the final decision of the Commissioner for judicial review.

## Background

After Ms. Flake's application was denied on initial and reconsideration reviews by the state agency, she requested and received a hearing before an ALJ on September 25, 2013.  Ms. Flake testified, as did a vocational expert.  She appeared *pro se* at the hearing. The ALJ issued his decision in January, 2014.

At step one, of the sequential evaluation process, the ALJ found that Ms. Flake had not engaged in substantial gainful activity since January, 2012.  At step two, he found that she has the following severe impairments:  (1) osteoarthritis of the left knee, (2) hypertension, and (3) chronic pain syndrome.  He found that the following impairments are not severe:  degenerative joint disease of the bilateral shoulders, general osteoarthritis, carpal tunnel syndrome, diastolic dysfunction, obesity, obstructive sleep apnea, and depressive disorder NOS.  He found that her alleged fibromyalgia is not an impairment. At step three, he found that she does not have an impairment or combination of impairments that meet or equal the criteria of any of the listing of impairments.

For steps four and five, the ALJ determined Ms. Flake's RFC.  He found that she retained the capacity for light work with additional exertional, postural, and exposure limitations.  At step four, he found that she has no past relevant work.  Finally, at step five, considering her age (35 years old), education (limited, can communicate in English),

and transferability of job skills (irrelevant), and based on the testimony of the vocational expert, the ALJ found that a significant number of jobs exists in the national economy that Ms. Flake can perform and that, therefore, she is not disabled.

In June, 2015, the Commissioner's Appeals Counsel denied Ms. Flake's request to review the ALJ's decision in June 2015, and she then filed this suit.  She has been represented by counsel throughout this Cause.

## Discussion

Ms. Flake asserts three errors in the ALJ's decision.

**1.  Medication side effects.**  Ms. Flake contends that the ALJ failed to assess the side effects of her medication.

When assessing the credibility of a claimant's allegations of symptom severity and resulting functional limitations, an ALJ must carefully consider — and, in some circumstances, seek out and obtain — all the relevant evidence when the alleged level or degree of a claimant's symptoms and limitations are not substantiated by objective medical evidence, because a person's experience of subjective symptoms, such as pain and fatigue, is idiosyncratic and not necessarily objectively confirmable.  20 C.F.R. 416.929; S.S.R. 96-7p.  The Commissioner's regulations and rulings provide a non-exhaustive list of factors that her adjudicators must consider when assessing the severity of a claimant's symptoms and limitations.  Among those factors is "[t]he type, dosage,

7

effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms."   20 C.F.R. 416.929(3); S.S.R. 96-7p.   The Commissioner recognizes that medication side effects can affect a claimants ability to maintain attention and concentration; affect her cognition, mood, and behavior; and reduce motor reaction times, all of which can interfere with or prevent work activity.  S.S.R. 03-02p.

When asked by the ALJ at the hearing what is the "number-one reason" why she is unable to work during the relevant period, Ms. Flake answered "Oh, god.  It's so much medication.  I'm on so many pills for my blood pressure; they all cause sleepy and drowsiness.  Usually I'm asleep right now."  (R. 55.)  She also testified at the hearing that her medicines give her headaches, (R. 59), make her tired, (*id.*), and make her constipated, (R. 63.  Ms. Flake also reported to her medical providers and to the S.S.A. various side effects from her medications, including sleepiness, dizziness, headaches, increased need to use the bathroom, leg pain, constipation, and feeling sick, non-functional, or comatose. (R. 212, 238, 297, 355, 357, 374, 417, 477.)  Thus, there is significant evidence in the record of severe and possibly disabling side effects of Ms. Flake's medications.

In assessing Ms. Flake's RFC, the ALJ acknowledged his duty to consider the side effects of her medications.  (R. 33.)  However, his only articulated evaluation is "there is no objective evidence of significantly limiting side effects with regard to her medications."  (R. 34.)  He did not identify the "objective evidence" that he believed would confirm significant limitations caused by Ms. Flake's side effects and that he found

was lacking.  If he meant signs and laboratory findings, 20 C.F.R. 416.928, then rejecting Ms. Flake's alleged severity of her side effects and their functional limitations because they were not confirmed by objective evidence contravenes 20 C.F.R. 416.929 and S.S.R. 96-7p, which explicitly teach that degrees of symptoms and limitations are not confirmable objectively and that symptom allegations may not be rejected solely because they are not substantiated by objective medical evidence.

The Commissioner argues that circuit precedent holds that an ALJ is not required to make specific findings regarding the side effects of medications; rather, a court need only determine whether an ALJ considered all of the alleged side effects.  In this case, she contends, the decision reveals that the ALJ did address Ms. Flake's side effects.  But the issue is not whether the ALJ was aware of or considered Ms. Flake's testimony and reports of disabling side effects of her medications but whether his reasons for rejecting those allegations are supported by substantial evidence.

The Commissioner goes on to point out "objective evidence" in the record that contradicts Ms. Flake's allegations:  she did not claim disability due to medication side effects and no physician indicated functional limitations due to side effects.  However, these are not reasons articulated by the ALJ and the Court cannot simply assume that they are what he meant by "objective evidence."  Moreover, the first is a testimonial inconsistency perceived by the Commissioner, certainly not contrary "objective evidence," and, again, it is not an inconsistency relied upon by the ALJ.

9

The Commissioner further argues that Ms. Flake has "presented no evidence of her medication side effects beyond her own reports" and that the medical reports do not "support her claims that she had resulting functional limitation." *Defendant's Memorandum in Support of the Commissioner's Decision* [doc. 19] ("*Response*"), at 7-8. As did the ALJ, the Commissioner does not identify what other evidence Ms. Flake could and should have produced, beyond her own testimony and reports, to prove or substantiate the level of symptoms and limitations that she alleged. Similarly, the assertion that medical reports do not support her allegations is conclusory and too abbreviated.

The Commissioner cites reports that Ms. Flake denied side effects, including excessive drowsiness. As noted, there are more reports where she affirmed side effects, including excessive drowsiness. Presumably, the Commissioner does not contend that a claimant's symptoms consistently must be at a disabling severity throughout a relevant period and throughout a course of different treatments and medications in order to be credible. At any rate, this is a reason not articulated by the ALJ in his decision and, therefore, is not reviewable in this case.

Finally, the Commissioner argues that, due to the lack of supporting evidence of functional limitations due to medication side effects, a remand for further consideration would be futile. *Response*, at 9. However, a claimant's personal experiences of symptoms and limitations are subjective and not susceptible of objective supporting evidence. They present issues of credibility that an ALJ is in a unique position to evaluate, especially as

10

it pertains to testimony at a hearing, and the ALJ, not the Commissioner's lawyer on judicial review, is charged with making those evaluations.   The present record contains Ms. Flake's testimony and reports to her physicians and the S.S.A. that assert severe symptoms which, if credited, render her disabled.   The ALJ's one articulated reason for finding them not credible is erroneous.   The resolution of her credibility is not foregone, however, which makes a remand not futile.

The ALJ's finding that Ms. Flake's testimony and reports regarding the disabling severity of the side effects of her medication and their resulting functional limitations is not supported by substantial evidence.   The Commissioner's denial of Ms. Flake's claim for benefits should be reversed and her claim should be remanded for reconsideration and rearticulation of the ALJ's finding.

2.   **Headaches.**   Ms. Flake testified to experiencing bad headaches three times a week, during which she cannot tolerate anything, including noise, (R. 59-60), and the record contains her reports to her physicians about her headaches, (R. 303, 417, 511).   The ALJ noted her testimony, (R. 32), but otherwise made no mention of her headaches.   He did not ask the vocational expert at the hearing about the impact on numbers of jobs existing for Ms. Flake if her headache allegations were credited.   The ALJ did not articulate his evaluation of the credibility of Ms. Flake's headache allegations.

The Commissioner argues that the ALJ sufficiently explained his evaluation of Ms. Flake's headaches when wrote that the extent of her symptoms and limitations are not

supported by clinical and diagnostic techniques, they are not supported by the records of treating and examining healthcare professionals, and that "there is insufficient objective medical evidence that the impairments are of such severity that they can reasonably be expected to give rise to the alleged *level* of pain and limitations."  (R. 35 (emphasis added).)  However, this passage is the ALJ's summary of his findings regarding all of Ms. Flake's alleged symptoms, not only her headaches, which he does not mention in any evaluative way.  The passage is only conclusory.  Nowhere in his decision does the ALJ identify the "medically acceptable clinical and diagnostic techniques" that are missing but that could have supported her headache allegations.   As noted above, the Commissioner's regulations and rulings recognize that, because a claimant's allegations of her experience of symptoms and resulting functional limitations is idiosyncratic and may not be susceptible to objective medical evidence, an ALJ may not reject her allegations because they are not confirmed by objective medical evidence.   The ALJ's rejection of Ms. Flake's symptoms allegations because of a lack of objective medical evidence that they are reasonably expected to produce the *level* of symptoms and limitations that she alleges is contrary to 20 C.F.R. 416.929 and S.S.R. 96-7p.

The Commissioner offers her own citations to record evidence that could support the ALJ's implicit discrediting of Ms. Flake's descriptions of her headaches.  *Response*, at 8.  If this were the only relevant evidence, then the Court might consider it on a harmless-error or futile-remand analysis.  However, Ms. Flake's testimony at the hearing and her

12

reports to her medical professionals are also in the record, and it is the ALJ's responsibility and duty to resolve those conflicts, not the Commissioner's lawyers on review.

Ms. Flake testified and reported to her doctors that she experiences frequent severe headaches that could be inconsistent with sustaining work activity.  Although the ALJ recited her testimony, he did not articulate any evaluation of her allegations.  Therefore, the Commissioner's denial of Ms. Flake's claim for benefits should be reversed and her claim should be remanded for reconsideration and rearticulation by the ALJ.

**3. Obesity.**  Ms. Flake argues that the ALJ failed to properly evaluate the impact of her obesity on the rest of her functioning.  The ALJ found that obesity is not a severe impairment for Ms. Flake, meaning that it does not significantly limit her ability to perform basic work activities.  (R. 26-27.)  Ms. Flake argues that S.S.R. 02-1p requires the ALJ to consider the effect of her obesity, even if not severe, at all steps of the sequential evaluation process.  However, she cites to no evidence or indication in the record that her obesity has any effect, in combination with her other severe and non-severe impairments, on her listings eligibility or her RFC.  She asserts only that "[o]besity is a contributing factor to Flake's disabilities that should not have been completely ignored."  This conclusory assertion is insufficient to warrant a remand for reconsideration of the effect of her obesity on her disability.

13

The ALJ found not only that that there was no evidence of "end organ damage or other significant problems" due to Ms. Flake's obesity, but no evidence that her weight had "negatively impacted her functionality . . . ."  (R. 27.)  With no indication that the record would support any impact of Ms. Flake's obesity on her functioning, a reversal and remand for reconsideration would be futile.

## Conclusion

The Commissioner's denial of Ms. Flake's claim for benefits should be reversed and her claim remanded for reconsideration and rearticulation of the side effects of her medication and her headaches.

## Notice regarding objections

Within fourteen days after being served with a copy of this recommendation, either party may serve and file specific written objections thereto. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2). A district judge shall make a *de novo* determination of those portions of the recommendation to which objections are made. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(3).  Failure to file an objection might result in forfeiture of the right to de novo determination by a district judge and to review by the court of appeals of any portion of the recommendation to which an objection was not filed. *Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011); *United States v. Pineda-Buenaventura*, 622 F.3d 761, 777 (7th Cir. 2010); *Schur v. L. A. Weight Loss Centers, Inc.*, 577 F.3d 752, 761 n. 7 (7th Cir. 2009); *Kruger*

14

*v. Apfel*, 214 F.3d 784, 787 (7th Cir. 2000); *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

**DONE this date:**   08/05/2016

Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Distribution to all ECF-registered counsel of record *via* ECF-generated e-mail.